## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **PETCO ANIMAL SUPPLIES STORES, INC.,** | |
| Plaintiff, | **8:14CV280** |
| vs. | **MEMORANDUM AND ORDER** |
| **THE FIVE FIFTY TWO CORPORATION,** a Nebraska corporation; | |
| Defendant. | |

This matter is before the Court on the Motion for Preliminary Injunction (Filing No. 19) filed by Plaintiff Petco Animal Supplies Stores, Inc. ("Petco"). The parties have submitted briefs and indexes of evidence supporting their respective positions, and a hearing on Petco's Motion took place on November 7, 2014. For the reasons discussed, the Motion will be granted.

### BACKGROUND

Defendant The Five Fifty Two Corporation ("The 552") is the owner of a commercial building, real property, and improvements located at 7110 Dodge Street, Omaha, Nebraska (the "Leased Premises"). On or about August 21, 1997, Petco and The 552 entered into a commercial lease (the "Lease"), with Defendant as the landlord and Plaintiff as the tenant. Under the terms of the Lease, Petco was granted three separate five (5) year renewal options (Filing No. 27-4 at ECF 7), the first of which Petco exercised on or about September 25, 2012; thus, extending the term of the lease to January 31, 2018. The Lease required Petco to "maintain and replace, as necessary" the Leased Premises and its systems. (Filing No. 27-4 at 10.)

The 552 alleges that Petco defaulted under the terms of the Lease by failing to comply with its maintenance and repair obligations, and by failing to timely cure those defaults after notice of the defaults. The 552 also alleges that Petco has an ongoing history of defaulting on its maintenance and tax payment obligations under the terms of the Lease. Before January 2014, The 552 notified Petco on several occasions about its failure to comply with maintenance obligations under the Lease.

On or about January 29, 2014, The 552 sent Petco a letter identifying four specific grounds for default under the Lease and stated that Petco would be in default if those four specific defaults were not cured within thirty days of the date of the letter ("Notice to Cure"). (Filing No. 27-8.) The Notice to Cure explained that, in an effort to obtain a quote from a casualty insurance company, The 552 had been informed that the condition of the Leased Premises was in disrepair and there were several items requiring immediate attention. The inspector noted (1) a crack in an outside wall, (2) water damaged ceiling tiles, (3) damaged and/or missing floor tiles, and (4) possible roof damage or leaks. (Filing No. 27-8 at 1-2.) The Notice to Cure stated that this list was not intended to be all inclusive, and asked that Petco inspect the Leased Premises for additional issues that might need to be addressed. (*Id.* at 2.) Although The 552 stated it was not obligated to provide Petco an additional cure period, it gave Petco 30 days from the date of the Notice to cure the defects.

The parties dispute whether Petco attempted to cure the defects. According to The 552, Petco did not cure the defects, nor did Petco respond to the Notice to Cure. (Filing No. 27-1 ¶ 27.) For this reason, on April 4, 2014, The 552 sent a letter to Petco terminating the Lease (the "Termination Notice"). (Filing No. 27-9.) The Termination

Notice stated that The 552 received no response to the Notice to Cure, and stated that the Lease was terminated, effective June 15, 2014.

Petco claimed it attempted to cure the defects listed in the Notice to Cure. On January 31, 2014, Petco issued work order 44540881 ("the Work Order") to a third-party contractor, allegedly to address the four specific items The 552 identified in the Notice of Default. (Filing No. 21-2 at ECF 7.) Petco claims the purpose of issuing the Work Order was to commence efforts to investigate and, where necessary, cure the specific items identified in the Notice of Default. (Filing No. 27-2 ¶ 7). Petco claims that it avoided default by contacting the contractor, because the Lease provides, in pertinent part, that "Tenant shall not be deemed to be in default if Tenant has commenced curing the default within the thirty (30) day period, and thereafter diligently pursues the completion of such cure." (Filing No. 27-4 at ECF 18.) Petco claims that it was not required to notify The 552 of its curative efforts under the terms of the Lease.

On April 11, 2014, Petco sent The 552 a letter disputing any defaulted on the Lease and detailing the efforts it undertook concerning the four specific items The 552 cited as bases for default under the Lease in the Notice to Cure. (Filing No. 1-5.)  The 552 rejected Petco's April 11, 2014, correspondence, however; and on or about April 21, 2014, sent Petco a letter, again asserting that the Lease would terminate effective June 15, 2014. (Filing No. 1-6.) In response to The 552's April 21, 2014, correspondence, Petco sent The 552 a letter dated May 7, 2014, stating that pursuant to the terms of the Lease there was no default nor valid termination. (Filing No. 1-7.)

The parties agreed to extend the date of the termination of the Lease to September 30, 2014, to provide time for structural and electrical engineers for both

3

parties to prepare reports. One of the inspection reports noted areas of distress on the flooring tiles in the Leased Premises, water-staining on the ceiling tiles, and exterior building cracks. (Filing No. 28-20.) In correspondence between the parties after the Termination Notice, The 552 repeatedly stated that efforts by Petco to address the maintenance issues would not cure the default, absent a signed writing from The 552. (Filing Nos. 27-10, 27-11.)

During this period, Petco claims it made repeated requests that The 552 acknowledge there was no default under the Lease nor a basis to terminate the Lease. The 552 denied these requests, and Petco argues that it became necessary for Petco to file the Complaint for Declaratory and Injunctive Relief. On October 23, 2014, The 552 confirmed its intention to serve Petco "with a three day notice to leave the Premises" if Petco did not file a motion for preliminary injunction. (Filing No. 22-1.) The 552 has confirmed that if the Court denies Petco's request for a preliminary injunction in this case, The 552 will issue a three-day notice for Petco to leave the Leased Premises, and file an action under Nebraska's forcible entry and detainer statutes to regain possession of the Leased Premises. (Filing No. 27-1 ¶ 37.)

**STANDARD**

A district court considers the four factors set forth in *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (en banc), when deciding whether to issue a preliminary injunction. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Dataphase*, 640 F.2d at 114). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability

4

that movant will succeed on the merits; and (4) the public interest." *Dataphase*, 640 F.2d at 114. "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). The movant bears the burden of establishing the propriety of the injunction. *See Roudachevski*, 648 F.3d at 705.

## DISCUSSION

### I.     Likelihood of Success on the Merits

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)). At this early stage of Petco's action, however, "the speculative nature of this particular inquiry militates against any wooden or mathematical application of the [*Dataphase*] test." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). "Instead, 'a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Id.* at 1179 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Lab., Inc.*, 815 F.2d 500, 503 (8th Cir.1987)).

Petco principally seeks a declaration that it is not in default under the terms of the Lease. The 552 argues that Petco materially defaulted under the terms of the Lease by repeatedly failing to comply with its maintenance and repair obligations under the Lease; failing to timely cure or commence curing those defaults within thirty days after Defendant provided notice to Plaintiff of the defaults; and failing to diligently pursue the

5

completion of the cure, as required by paragraph 24(b) of the Lease. Paragraph 24(b) of the Lease states:

> There shall not be held to be a Tenant "Event of Default" unless there is:
>
> . . .
>
> (b) default by Tenant in the performance or observance of any covenant or agreement of this Lease (other than a default involving the payment of money), which default is not cured within thirty (30) days after the giving of Notice thereof by Landlord; provided, however, that Tenant shall not be deemed to be in default if Tenant has commenced curing the default within the thirty (30) day period, and thereafter diligently pursues the completion of such cure."

(Filing No. 27-4 at ECF 18.)

In the Notice to Cure, The 552 identified four specific items it alleged as grounds for default, while stating that the list was not intended to be all-inclusive.[1] The 552 argues that the reports from engineers hired by both parties demonstrate that Petco failed to commence curing or diligently pursuing a cure. Petco's engineer performed an inspection on May 30, 2014, that revealed 1) two "areas of distress" on the flooring tiles; 2) "three locations where water staining was observed on the ceiling tiles"; and 3) exterior building cracks, some of which had recently been repaired with flexible caulk. (Filing No. 28-20 at ECF 60.) On August 28, 2014, The 552's engineer observed the same deficiencies noted in the report from Petco's engineer. (Filing No. 27-12 at ECF 3-4.) Based on this evidence, The 552 argues that Petco failed to perform its maintenance obligation under the Lease, and was in default.

---

[1] The parties appear to disagree as to whether the grounds for default must be limited to the four specific items listed in the Notice to Cure. Petco claims that The 552 has not served Petco with additional notices to cure with additional grounds for default. The 552 argues that it is not limited to the four items listed in the Notice to Cure because the list was not intended to be all inclusive. Further evidence will be needed to determine whether Petco was in default, and the Court will not decide at this juncture whether The 552's Notice is limited to the items listed.

Petco argues that it cannot be in default because it commenced curing within thirty days of the Notice to Cure. On January 31, 2014, Petco issued Work Order 4450881 to PVC Facility Management, Inc. ("PVC") for the purpose of investigating and curing the items identified by The 552 as bases for default under the Lease. (Filing No. 21-2 ¶¶ 6-7.) Petco argues that PVC investigated and cured some items listed in the Notice to Cure by March 17, 2014. (*Id.* ¶ 8.) Petco submitted evidence that other items identified in the Notice to Cure were addressed through ongoing repair and remodeling work to the Leased Premises, and Petco secured financing in excess of $250,000 to complete the work. (*Id.* ¶¶ 9-12.)

Significant factual questions remain as to whether Petco commenced curing the default identified in the Notice to Cure within thirty days of January 29, 2014, and whether Petco diligently pursued the completion of such cure since that date. Although The 552's evidence suggests that some issues remained uncured as late as August 2014, it does not definitively demonstrate that Petco failed to pursue a cure diligently within the time required by the Lease. The repairs appear to be extensive in nature, and it is plausible that securing a contractor and financing for such repairs could take several months. At this early stage, and based upon the evidence on the record, the Court cannot determine which party is likely to succeed on the merits. Accordingly, this factor weighs neither for nor against issuance of a preliminary injunction.

## II.     Threat of Irreparable Harm

The Court concludes that the evidence demonstrates a threat of irreparable harm to Petco if The 552 is allowed to proceed with forcible entry and detainer proceedings. "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the

harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski v. All–Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)). Sufficient showing on this second factor in the *Dataphase* analysis can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994).

Petco has shown, for purposes of this Motion, that the location of the Leased Premises, near 72nd Street and Dodge Street in Omaha, is unique and valuable. (Filing No. 21-2 ¶ 16.) Petco has actively marketed its location as recognizable and convenient, and Petco's loss of the location and associated good will would be difficult to measure in money damages. (*Id.* ¶ 17.) Petco also has shown that it would be difficult to transfer the value of the Leased Premises and its goodwill to a different location. (*Id.* ¶¶ 15-19.) Petco also has demonstrated an imminent threat to its rights in the Lease Premises. The 552 has admitted that if this Court does not enter a preliminary injunction, it will proceed to issue a three-day notice to quit the Leased Premises and will file an action under Nebraska's forcible entry and detainer statutes, Neb. Rev. Stat. §§ 25-21,219 to 21,235 (Reissue 2008). While the outcome of the forcible detainer proceedings is not certain, if Petco is wrongly ousted from the Leased Premises during the pendency of this litigation, it would be difficult to restore Petco's rights or compensate Petco for its loss. Thus, for purposes of this Motion, Petco has demonstrated an imminent threat of irreparable harm if a preliminary injunction is not issued.

The 552 argues that Petco has not shown irreparable harm because Petco will have an adequate remedy at law to protect its rights through state court proceedings under Nebraska's forcible entry and detainer statutes. This argument ignores the fact that Petco has invoked the Court's diversity jurisdiction to have its rights determined through a declaratory judgment action before this Court. The 552 does not challenge the Court's jurisdiction, and also invokes the Court's diversity jurisdiction in its counterclaim. (Filing No. 11 at 9.) "The diversity-of-citizenship requirement has a special nature and purpose, to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants." *CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 837 (8th Cir. 2013) (internal marks and citations omitted). Although the continued need for diversity jurisdiction might be subject to debate, Petco, a foreign corporation, chose to have its rights determined in federal court. The mere fact that an alternative forum exists for determining at least some of the rights between the parties does not negate the potential irreparable harm to Petco. *See* Fed. R. Civ. P. 57. ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.")

## III. Balance of the Harms

The balance of potential harms weighs in favor of issuance of an injunction. The primary question when issuing a preliminary injunction is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec.*

9

*Co-op.*, 28 F.3d at 1473. A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

The 552 will suffer little harm if a preliminary injunction is issued. There is no evidence that The 552 is suffering economic harm because Petco is continuing to pay rent.[2] Nor has The 552 shown that Petco's continued occupancy during the pendency of this case harms The 552 or any third parties such that immediate possession is necessary. Further, even if Petco makes the proposed improvements and repairs to the Leased Premises, Petco still could be found to have defaulted on the Lease. In that event, the Leased Premises would be in an improved state, and The 552 would have established its rights to re-take possession of the Leased Premises.

In contrast, if a preliminary injunction is *not* issued, Petco has may suffer substantial harm. As stated above, The 552 has represented to Petco and the Court that if an injunction is not issued, it will immediately commence proceedings under the forcible entry and detainer statutes. In such a case, Petco would be forced to defend a parallel action in a state court. If Petco loses possession in forcible entry and detainer proceedings, but is later found not to be in default, it may be unable to recover possession of the Leased Premises. Because The 552 faces little harm, if any, the balance-of-harms factor weighs heavily in favor of issuance of a preliminary injunction.

---

[2] Although The 552 continues to accept rental payments from Petco, The 552 has not necessarily waived its claims that Petco is in default. The Lease explicitly states "The receipt by Landlord of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach." (Filing No. 27-4 at ECF 23.)

10

## IV.    Public Interest

The public interest factor weighs in favor of an injunction at this early stage. In weighing this factor, the Court considers what public interests might be injured and what public interests may be served by denying or granting a preliminary injunction. S*ierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011). The Eighth Circuit has stated that, "the determination of where the public interest lies is also dependent on the determination of likelihood of success on the merits," because it is in the public interest to protect rights. *Phelps–Roper v. Nixon,* 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012).

While the Court cannot determine at this early stage whether Petco defaulted on the Lease, or cured any such default, the Court concludes that the public interest will not be harmed if a preliminary injunction is granted. The public has an interest in protecting a foreign corporation's decision to have its rights determined in a federal forum. Further, even if the Court eventually determines that Petco *did* default, the Court may place conditions in a preliminary injunction to protect The 552's rights during the pendency of the litigation. Accordingly, the Court concludes that the public interest will not be harmed by the issuance of a preliminary injunction.

## V.    Bond Requirement

Rule 65 requires a movant to give security for the issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(c). The Court must require an appropriate bond and articulate its findings to support its determination. *See Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir.1991). "The bond posted under Rule 65(c) 'is a security device, not a

limit on the damages the defendants may obtain against [the plaintiff] if the facts warrant such an award.'" *Branstad v. Glickman*, 118 F.Supp.2d 925, 944 (N.D. Iowa 2000) (quoting *Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1309 (8th Cir. 1997)).

The 552 asks that Petco be required to continue to abide the terms of the Lease, and that the Court expressly state that Plaintiff's compliance with the Lease, including the payment of rents and efforts to make improvements on the Leased Premises, not be deemed a waiver by The 552 of its claim that Petco defaulted on the Lease. The Court concludes that these conditions are reasonable, and will serve to maintain the status quo. The 552 asks, in the alternative, that Petco deposit a cash bond sufficient to cover the rents, real estate taxes, and other payments that may become due from Petco during the pendency of this litigation; however, The 552 does not state a specific amount it suggests be posted by Petco.

Petco estimates that the cost of curing the remaining defects in the Leased Premises is approximately $250,000, and states that it has secured financing in that amount. Accordingly, the Court finds that a bond in that amount is reasonable. Petco will be ordered to deposit the bond with the Clerk of Court. Disbursements from the deposited funds may be ordered as necessary for payment of contractors.

## CONCLUSION

For the reasons stated, the Court finds that the *Dataphase* factors weigh in favor of granting a preliminary injunction. Accordingly,

IT IS ORDERED:

1. The Motion for Preliminary Injunction (Filing No. 19) filed by Plaintiff Petco Animal Supplies Stores, Inc., is granted, as follows:

    a. Defendant The Five Fifty Two Corporation is enjoined from instituting eviction proceedings against Petco or otherwise taking steps to gain possession of premises leased to Petco during the pendency of the above matter;

    b. Petco will continue to pay Defendant rent and comply with all other lease obligations, including but not limited to payment of real estate taxes, during the pendency of this case;

    c. Petco's payment of rent, its compliance with other lease obligations, and its efforts to maintain or improve the leased premises during the pendency of this case, shall not be deemed a waiver by Defendant The Five Fifty Two Corporation regarding its claim that Petco is in default of the Lease and that the Lease has terminated;

2. Within fourteen (14) days of this Memorandum and Order, Petco will remit to the Clerk of Court security in the amount of $250,000.00; and

3. Upon motion to the Court, the Court may order disbursements from the funds deposited with the Clerk of Court to ensure payment of contractors.

Dated this 17th day of November, 2014

> BY THE COURT:
>
> s/Laurie Smith Camp
> Chief United States District Judge